**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Ira Longen and Mary Jo A. Jensen-Carter, Trustee for the Bankruptcy Estate of Ira Longen,

Plaintiffs,

v.

Waterous Company,

Defendant.

Civil No. 02-367 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Richard A. Williams, Jr., Esq., Williams & Iversen, 1611 West County Road B, Suite 208, Roseville, MN 55113, counsel for Plaintiffs.

Penelope J. Phillips, Esq., Felhaber Larson Fenlon & Vogt, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402-4302, counsel for Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on July 27, 2002, pursuant to Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. In the Complaint, Plaintiff alleges disability discrimination in violation of the Americans with Disabilitics Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). For the reasons set forth below, Defendant's motion is granted and Plaintiffs' motion is denied.

## Background

Plaintiff Ira Longen ("Longen") was employed with Defendant Waterous Company ("Waterous") from July 23, 1974, until his termination on September 7, 2000. While employed

AUG 1 3 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD AUG 1 3 2002
DEPUTY CLERK

with Waterous, Longen underwent chemical dependency treatment five times: in June of 1993, February of 1994, May of 1995, January of 1996, and June of 1996.

When Longen entered treatment for the second time, in February of 1994, Waterous informed him that he could return to work with no discipline if he successfully completed the treatment program. Similarly, when Longen entered treatment in May of 1995, Waterous informed him that his return to work was conditioned upon him successfully completing treatment and complying with all after-care requirements.

The January 1996 treatment program was a two and a half month in-patient treatment program. Waterous allowed Longen to return to his position following this extended absence, subject to a "last chance agreement" which specified that Longen was required to abstain from all mood-altering substances, including alcohol, and that violation of the agreement would lead to his immediate dismissal.

Despite this last chance agreement, in June of 1996, less than four months after Longen returned to work following his treatment, Waterous learned that Longen was using cocaine. Waterous suspended Longen for five days with the intent to dismiss him permanently. Longen's union negotiated on his behalf, and Waterous agreed to give Longen still one more chance. After the five-day suspension, Longen returned to work subject to yet another "last chance agreement." The terms of that agreement state: "Future use of any mood altering chemicals, including alcohol or violation of working rules generally related to chemical dependency will result in immediate termination of employment from Waterous Company."

In August of 2000, Waterous learned that Longen was arrested for driving while intoxicated in April of 2000. Longen pled guilty to that charge in June of 2000. Pursuant to the terms of the "last chance agreement," Waterous terminated Longen's employment.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

### 2. Longen's Disability Discrimination Claims

As an initial matter, Longen asserts that the terms of the "last chance agreement" are ambiguous, that the agreement does not clearly preclude Longen from drinking or doing drugs on his own time, so to speak. In other words, Longen asserts that the "last chance agreement" does

not clearly prohibit him from ingesting mood altering chemicals or becoming intoxicated except when he is at work.

The Court does not agree that the "last chance agreement" is ambiguous. To the contrary, the agreement is crystal clear that Longen's return to work was conditioned on his agreement to abstain from mood altering chemicals, including alcohol. Period. The agreement does not contain any further qualification and, in the absence of some suggestion that further qualification was intended, the Court will not limit the terms of the agreement beyond their plain meaning.

Given, then, that the "last chance agreement" clearly provides that Waterous will terminate Longen in the event he ingests or imbibes mood altering chemicals, including alcohol, the Court turns to Longen's claim that the agreement, either as drafted or as applied, somehow violates the ADA or the MHRA. Again, the Court finds Longen's arguments unpersuasive.

First, to the extent that Longen's claims are based on the fact of his termination, they fail because it is undisputed that Waterous terminated Longen for violating the "last chance agreement," not for being an alcoholic. At a minimum, the terms of the "last chance agreement" and Longen's violation of them constitute a legitimate non-discriminatory reason for Longen's termination, and Longen has offered no evidence that said reason was pretextual. *See Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1182 (6th Cir. 1997); *McKey v. Occidental Chemical Corp.*, 956 F. Supp 1313, 1318-19 (S.D. Texas 1997).

Moreover, to the extent that Longen's claims are based on his assertion that the "last chance agreement" itself violates the ADA or the MHRA, Longen's claims fail because, as a matter of law, the "last chance agreement" was a reasonable accommodation of Longen's

disability–chemical dependency[1]–under the facts and circumstances of this case. The conditions imposed upon Longen were done so after Waterous had tolerated Longen's repeated absences, both as a result of his intoxication and as a result of his treatment. It is undisputed that Waterous could have terminated Longen in June of 1996 rather than enter into the last chance agreement with him. As a result, Waterous's continued employment of Longen, under whatever conditions it chose to place him, was a reasonable accommodation of his disability. *See id.* Given the number, frequency, and gravity of Longen's many absences for treatment, the Court concludes that the "last chance agreement" was, as a matter of law, a reasonable accommodation.

Even if the Court were to conclude that the reasonableness of the "last chance agreement" presented a question of fact, the Court would nevertheless grant summary judgment in favor of Waterous because any claim by Longen that the "last chance agreement" itself was discriminatory is barred as untimely. Longen asserts that his ability to challenge the propriety of the "last chance agreement" did not accrue, and the statute of limitations did not begin to run, until the agreement was enforced with Longen's termination. This argument flies in the face of the law on limitations in the employment context.

In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S. Ct. 498 (1980), the plaintiff, a professor, was denied tenure and entered into a "terminal year" of teaching. Ricks completed his

---

[1] The record on Longen's disability is a bit muddy. Longen indicates that his disability is, and in 1996 was, alcoholism. However, the record suggests that all of Longen's chemical dependency treatment was related to his use of cocaine. To the extent that Waterous required Longen to sign the "last chance agreement" because of Longen's cocaine dependency, Longen's ADA and MHRA claims fail for the additional reason that an individual presently using illegal drugs–as Longen was in 1996–is not a "qualified individual with a disability." 42 U.S.C. § 12114(a). Longen suggests that Waterous's inclusion of a prohibition on alcohol use in the "last chance agreement" indicates that Waterous perceived Longen as an alcoholic, but the Court finds that this language is insufficient to support a finding that Waterous perceived Longen as anything other than dependent on cocaine.

terminal year and filed a complaint alleging discrimination with the Equal Employment Opportunity Commission at some point after the end of that terminal year. The plaintiff argued that the statute of limitations did not begin running until he was terminated at the end of his terminal year. The Supreme Court disagreed. The Court held that the discriminatory action was the denial of tenure, the termination was the inevitable and utterly foreseeable consequence thereof. There were no further allegedly discriminatory acts after the decision to deny tenure, hence the statute of limitations began to run at that time, not when the effects of the conduct were fully realized. The Court was not persuaded by the argument that the employer had the opportunity to change its mind up until the point the termination became a reality; the Court determined that the reconsideration, while a possibility, was not part of the regular tenure process and thus the failure to reconsider was not itself discriminatory (and hence did not serve to toll the statute of limitations).

Similarly, here the allegedly discriminatory conduct was the imposition of certain conditions on Longen's continued employment, conditions imposed in 1996. Longen may not have felt the effect of those conditions until he breached them and was, consequently, terminated, but any claim he might have arising directly from the imposition of the conditions themselves is time-barred.

Thus, even if the Court were to find that some issue of fact existed with respect to Longen's claim that the very fact of the "last chance agreement" was discriminatory, such a claim would be time-barred. As it is, there is no issue of fact; the "last chance agreement" was, as a matter of law, a reasonable accommodation of any protected disability Longen might have had; and Longen's claims related to the drafting of the "last chance agreement" fail on the merits as well. Moreover, the "last chance agreement" and Longen's violation of it constitute a

legitimate non-discriminatory reason for Longen's termination, so any claim based solely on the termination itself must also fail. Accordingly, Longen's claims must be dismissed in their entirety.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. No. 2) is **GRANTED**;
2. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 9) is **DENIED**; and
3. The **COMPLAINT** is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 13, 2002

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;' or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*