# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 02-3297

| | | |
|---|---|---|
| Ira Longen, Plaintiff - Appellant, | * | |
| Mary Jo A. Jensen-Carter, Trustee for the Bankruptcy Estate of Ira Longen, Plaintiff, | * | Appeal from the United States District Court for the District of Minnesota. |
| v. | * | |
| Waterous Company, Defendant - Appellee. | * | |

Submitted: May 14, 2003

Filed: October 20, 2003

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

SMITH, Circuit Judge.

Ira Longen sued his former employer, Waterous Company, alleging that the terms of his "last chance agreement" violated the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). On cross motions for

summary judgment, the district court[1] denied Longen's claim. Longen then appealed. We affirm.

I.

Longen was an employee with Waterous Company from July 23, 1974, until he was terminated on September 7, 2000. During that time, he had recurring substance abuse battles, entering chemical dependency treatment five times–in June of 1993, February of 1994, May of 1995, January of 1996, and June of 1996–while employed by Waterous.

Waterous learned of Longen's problems with chemical substances in February 1994. On February 17, 1994, Longen and Waterous entered into an agreement in which the parties agreed that if Longen successfully completed a treatment program, then Waterous would allow Longen to return to work without any discipline. However, in May 1995 Longen relapsed. The parties then entered into a similar–but more structured–agreement that permitted Longen to return to work if he successfully completed another inpatient treatment program as well as an extensive aftercare program.

Less than six months after exiting the inpatient treatment program, Longen again relapsed and entered another treatment program. Waterous and Longen entered into a third agreement, which was deemed by the parties as a last chance agreement ("LCA"). It again permitted Longen to return to work. However, it required him to, among other things, complete the two and one-half month treatment program and to "abstain from using any mood altering chemicals, including alcohol." The parties

---

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

agreed that if Longen violated any of the terms of the LCA, he would "be subject to immediate termination."

Despite this, in June 1996, less than four months after Longen returned to work following his treatment, Waterous learned that Longen was using cocaine. On June 25, 1996, Waterous suspended Longen for five work days and notified him of its intent to dismiss him based upon the last chance provision of the January agreement. On July 2, 1996, however, Longen's union and Waterous negotiated still another LCA. Under the terms of this agreement, Longen was permitted to return to work after the completion of his suspension. The terms of that agreement stated: "Future use of any mood altering chemicals, including alcohol or violation of working rules generally related to chemical dependency will result in immediate termination of employment from Waterous Company."

Four years later–in April 2000–while absent from work because of a workers' compensation injury, Longen was arrested for driving while intoxicated ("DWI"). In June 2000 he pleaded guilty to the charge. Four months after the arrest, Waterous learned of the DWI . Pursuant to the terms of the LCA, Waterous terminated Longen's employment on September 7, 2000.

On January 23, 2002, Longen filed suit in Minnesota state court, alleging claims of wrongful termination under the ADA and MHRA. Upon Waterous's motion, the case was then removed to the district court. The parties then filed cross-motions for summary judgment. After hearing oral argument, the district court granted Waterous's summary-judgment motion and entered judgment dismissing Longen's claims.

II.

We review this grant of summary judgment de novo. *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003). A court may grant a motion for summary judgment when there is no genuine issue as to any material fact and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one, which depending on the applicable substantive law, might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Fenney*, 327 F.3d at 711 (citing *id.*).

In a claim of discriminatory termination under the ADA,[2] we apply "the traditional burden-shifting framework of *McDonald Douglas*." *Id.* at 711–12. Under the *McDonald Douglas* framework, Longen must first establish a prima facie case of discrimination. *Id.* Under the ADA, Longen must show that he "(1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability.'" *Id.* (citing *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002)). After he has established each element of his prima facie case, Waterous must then "rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (citation omitted). If Waterous does this, then "the burden of production shifts back to [Longen] to demonstrate that [Waterous's] non-discriminatory reason is pretextual." *Id.* (citation omitted).

In this case, the district court apparently assumed, without deciding, that Longen had met his prima facie case.[3] Because the record on this issue is not fully

---

[2] The MHRA parallels the ADA. *Fenney*, 327 F.3d at 711 n.5. Thus, we analyze the claims at the same time. *Id.*

[3] On appeal Waterous argues that he has not. We need not decide this issue, because we can affirm on other grounds. *African American Voting Rights Legal*

developed, we likewise will assume without deciding that Longen has met his prima facie case. Therefore, Waterous must offer a legitimate, non-discriminatory reason for terminating Longen. As proof of its reason, Waterous offered evidence of its various agreements with Longen as well as the July 1996 LCA. In response, Longen argues that the LCA–to which Longen agreed and signed–is not a legitimate reason for terminating Longen because it violates the ADA.

Longen first argues that the LCA itself violates the ADA because it subjects Longen to employment conditions that are different from Waterous's other employees.[4] However, all return-to-work agreements, by their nature, impose employment conditions different from those of other employees. As a result, courts have consistently found no disability discrimination in discharges pursuant to such agreements. *See, e.g., Mararri v. WCI Steel Inc.*, 130 F.3d 1180 (6th Cir. 1997); *Fuller v. Frank*, 916 F.2d 558 (9th Cir. 1990); *McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313 (S.D. Tex. 1997); *Golson-El v. Runyon*, 812 F.Supp. 558 (E.D. Pa. 1993), *aff'd*, 8 F.3d 811 (3d Cir. 1993) (mem.); *see also Nelson v. Williams Field Services Co.*, No. 99-8041, *available at* 2000 WL 743684 (10th Cir. June 9, 2000). This conclusion only makes sense. The terms to which Longen agreed were supported by valuable consideration–i.e., that he would not be terminated. Moreover, Longen has not alleged that he was coerced or was made to sign the LCA under duress. Rather, he freely signed it. To find now that Waterous cannot enforce the terms of the LCA would render all such agreements invalid. We decline to do so.

---

*Defense Fund, Inc. v. Villa*, 54 F.3d 1345, 1356 (8th Cir.1995).

[4] Longen argues in his brief that we should apply the analysis of *Miners v. Cargill Comm., Inc.*, 113 F.3d 820 (8th Cir. 1997). *Miners*, however, is inapposite. In that case, Annie Miners was fired because her employer perceived her as being an alcoholic. Here, Longen was not fired because he was an alcoholic. Instead, he was fired because he violated the terms of his LCA.

Longen next argues that the LCA violates the ADA because it subjects him to termination for any "future use of any mood altering chemicals," regardless of whether the use of such chemicals was at his workplace. To support his argument, he seizes upon the ADA's language, which states that an employer "may require that employees shall not be under the influence of alcohol . . . at the workplace." 42 U.S.C. § 12114(c). However, this argument completely misses the point. Section 12114(c) refers to the types of permissible restrictions a company may impose upon all employees *at the workplace*–regardless of whether they are alcoholics or not. However, under the ADA there are no restrictions on what type of further constraints a party may place upon himself.

Longen placed separate restrictions on his conduct when he signed the LCA. One of these restrictions was that he would refrain from the "future use of any mood altering chemicals." Again, these additional restrictions were not gratuitous. Because of them, Longen was able to continue working at Waterous. Thus, Longen has not shown that the ADA forbids such agreements.

III.

Thus, because Longen has failed to establish that Waterous's reason for dismissing him was pretextual, the judgment of the district court is affirmed.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans